**John I. BROWN, Appellant,**
**v.**
**UNITED STATES of America,**
**Appellee.**

**No. 20041.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 23, 1966.

Decided Nov. 10, 1966.

Mr. David Rein, Washington, D. C. (appointed by this court), for appellant.

Mr. John R. Risher, Jr., Atty., Dept. of Justice, of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and WRIGHT and McGOWAN, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

This case presents once again the troublesome problem of introducing evidence of a defendant's prior convictions to impeach his credibility, as authorized by 14 D.C.CODE § 305 (Supp. V 1966). Appellant asks that we reverse his conviction because the trial court's ruling on the admissibility of appellant's prior conviction was not in accord with our decision in Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

Appellant was convicted by a jury of assaulting a police officer with a dangerous weapon.[1] The facts giving rise to the assault charge were not in dispute. On June 5, 1965, appellant was beaten severely by a group of boys, sustaining multiple fractures of his jaw. When two police officers arrived at appellant's home to render aid, appellant refused their assistance, went to a nearby carry-out shop, and became involved in a fight with another youth. When the officers sought to intervene, appellant ran home, returned with a table knife, and refused to surrender the weapon despite warnings by the officers, both of whom con-

1. 22 D.C.CODE § 505 (Supp. V 1966).

fronted appellant with drawn guns. In spite of the drawn guns, appellant assaulted one of the officers with the table knife. Relying on testimony of the officers and two other witnesses describing his actions, appellant's defense was unconsciousness of his behavior at the time of the offense.

In support of the claim of unconsciousness trial counsel hoped to call appellant to the stand for his account of the events. Aware, however, that this could open the way for introduction in evidence of a prior conviction of assault with a dangerous weapon,[2] counsel requested the court to rule the conviction inadmissible under the authority of Luck v. United States, *supra*.[3] The request was denied[4] and appellant decided not to take the stand.

In *Luck* we noted the problems involved in admitting prior convictions for impeachment purposes. 121 U.S.App. D.C. at 156–157, 348 F.2d at 768–769. Without doubt, reciting a defendant's prior criminal record to the jury can be highly prejudicial, especially where, as here, the prior offense is a crime similar to the one on trial. See Pinkney v. United States, 124 U.S.App.D.C. 209, 363 F.2d 696 (1966). Thus the impeachment rule confronts the defendant with a dilemma. Although his testimony may

---

2. The prior assault, also involving a knife, occurred in December, 1964. Appellant was given an indeterminate sentence under the Youth Corrections Act, 18 U.S.C. § 5010(b). See United States v. Brown, D.D.C., Crim. No. 80–65, June 25, 1965.

3. Compare Walker v. United States, 124 U.S.App.D.C. 194, 363 F.2d 681 (1966); Hood v. United States, 125 U.S.App.D.C. —, 365 F.2d 949 (1966). See also Stevens v. United States, — U.S.App.D.C. —, 370 F.2d 485 (decided October 20, 1966) (dissenting opinion of Judge Fahy).

4. The colloquy between counsel and the trial court reads in relevant part:

MR. DRISCOLL: * * * Now, he was 18 years old when he was convicted of that, and Your Honor can see the prejudice which will arise from impeachment by that crime. Here is a crime of virtually the same nature and the conviction within a month of the offense charged in this indictment.

* * * I think it would be extremely prejudicial and so much so that I have advised the defendant that in my judgment he should not take the stand and tell his version of this happening if he is going to be impeached with this prior conviction, and I would only submit to the Court that in aiding the jury's task to find the truth of the facts here in issue, that it would be of more value to them to hear the defendant and to hear what he has to say about this incident than it would be to learn that he has a prior conviction for assault with a dangerous weapon and—

THE COURT: Well, this prior conviction of assault with a dangerous weapon and the effect it might have on his sentence if he were convicted would be such as to invite perjury on the defendant's part, wouldn't it? I'm not saying that it would be perjury but it would invite it, I believe, would it not?

* * * * *

Well, as I just suggested, the defendant, *knowing the possible effect of a prior conviction when he is sentenced, if he were convicted in this case would have some tendency to make a defendant in a given case commit perjury in order to try to avoid conviction*, it would seem to me.

MR. DRISCOLL: Speaking in the abstract, perhaps that would be so, Your Honor.

THE COURT: Well, *it is in the abstract that I am speaking*.

* * * * * *

Let me see your case that you have there.

* * * * * *

Well, the Court [in *Luck*] says there may well be cases where the trial judge * * * might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probable relevance of the prior conviction to the issue of credibility.

Well, in this case I definitely do not feel that the prejudicial effect of impeachment far outweighs the probity or relevance of the prior conviction on the issue of credibility but, to the contrary, that the relevance of the prior conviction to the issue of credibility far outweighs any probable or possible prejudicial effect of impeachment as a result thereof. (Emphasis supplied.)

provide useful, even critical, information, he must weigh the prejudice that will attend exposure of his criminal record. Too often the defendant is kept from the stand or, having risked impeachment, is clearly prejudiced by admission of his prior record.[5]

It was with this experience in mind that we were led in *Luck* to hold that, while prior convictions might have some bearing on credibility, the trial court is not bound by 14 D.C.Code § 305 to permit impeachment in every case. Rather we called upon the trial court to exercise discretion, noting that "[t]here may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility." 121 U.S.App.D.C. at 156, 348 F.2d at 768. (Footnote omitted.) We went on to mention some of the considerations that might be relevant in exercising that discretion, such as "the nature of the prior crimes, the length of the criminal record, the age and circumstances of the defendant, and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." 121 U.S.App.D.C. at 157, 348 F.2d at 769. (Footnote omitted.) Finally, we cited as "a highly desirable guide for the trial judge" Rule 303 of the American Law Institute's Model Code of Evidence (1942).[6] 121 U.S.App.D.C. at 156 n. 8, 348 F.2d at 768 n. 8.

In the case before us the trial judge unfortunately did not base his ruling on these individualized considerations. Instead he spoke of an "abstract" belief that those with prior convictions are likely to commit perjury because they fear the effect the prior conviction will have on their sentence should they be convicted again. As is obvious, should such an abstraction be permitted to prevail *Luck* would be rendered meaningless; if we accept the view that prior convictions provide such an impetus to commit perjury as to outweigh any prejudicial effect of impeachment, then we will have returned to the automatic impeachment rule *Luck* sought to change.

Moreover, the idea that a prior conviction provides a *motive* for perjury misconstrues the theory of impeachment. The reason for exposing the defendant's prior record is to attack his *character*, to call into question his reliability for truth-telling by showing his prior, relevant antisocial conduct. One need not look for prior convictions to find motivation to falsify, for certainly that motive inheres in any case, whether or not the defendant has a prior record. What greater incentive is there than the avoidance of conviction? We can expect jurors to be naturally wary of the defendant's testimony, even though they may be unaware of his past conduct.[7] In fact, when the defendant does take the stand, the jury is charged to consider his interest in the outcome of the trial in assessing his credibility.

This is not to say that a prior conviction has no relevance to credibility. It is to say that the trial judge, in weighing the prejudice that might result from its

---

5. See BORCHARD, CONVICTING THE INNOCENT 136–140, 158–164, 364–367 (1932); FRANK, NOT GUILTY 106–107 (1957). See generally McCORMICK, EVIDENCE § 43 (1954); Note, 78 HARV.L.REV. 426, 435–442 (1964); Note, *Other Crimes Evidence at Trial: Of Balancing and Other Matters*, 70 YALE L.J. 763, 774–778 (1961).

6. "(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will.

    \*     \*     \*     \*     \*

"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury \* \* \*."

7. See Note, *supra* Note 5, 78 HARV.L.REV. at 440.

admission against the interest in having the defendant testify, should focus on just how relevant to credibility a particular conviction may be.[8] While one who has recently been convicted of perjury might well be suspected of lying again under oath, the fact that a defendant accused of assault has already been convicted of assault has no such bearing on credibility. Certainly the prior assault establishes a history of violent behavior, but proof of prior violent behavior is inadmissible to prove assault. See Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

■ Because the trial judge misconstrued his role under *Luck*, we cannot accept as a proper exercise of his discretion his ruling that appellant's prior conviction would be admissible. Indeed, when the facts established by the record are measured against the principles discussed here and in *Luck*, the ruling must be held erroneous. This is a classic illustration of a case in which "the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility." Luck v. United States, *supra*, 121 U.S.App.D.C. at 156, 348 F.2d at 768. Moreover, appellant's conduct at the time of the offense was critical to determining whether he was conscious of his behavior. To have his own account of his actions could well have aided the jury in resolving his claim of unconsciousness. To have foreclosed that account with the threat of impeachment did nothing to further the cause of truth.[9] Thus whether viewed as a case where prejudice outweighs relevance to credibility or as one where it would be better to hear the defendant than not, the prior conviction should have been ruled inadmissible.[10]

8. Compare Commissioners on Uniform State Laws' Uniform Rule of Evidence 21:
"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. * * *"
Like the Uniform Rules of Evidence, the A.L.I.'s Model Code also addresses itself specifically to the matter of impeaching a criminal defendant by means of prior convictions. It too provides in substance that there may be no impeachment for this purpose unless the accused himself has introduced evidence solely for the purpose of supporting his credibility; and even then the prior convictions must be for crimes involving dishonesty or false statement. See Model Code of Evidence Rule 106 (1942). The drafters of the proposed Federal Rules of Evidence will presumably direct their attention to this same problem.

9. The Government argues that foreclosing appellant's testimony did not mean the jury was "left without one version of the truth," Luck v. United States, *supra*, 121 U.S.App.D.C. at 157, 348 F.2d at 769, because other witnesses testified in appellant's behalf. However, *Luck* did not say that foreclosing the defendant's story was permissible as long as *someone* told his story for him. Rather we said it would be *especially* unfortunate to fore-

close the defendant if he were the only source of information; we did not preclude the possibility that foreclosure would be unfortunate where, as here, the *defendant's* version of his story would be especially relevant.

10. Appellant urges a further reason for excluding the prior conviction. The Youth Corrections Act, 18 U.S.C. § 5021 (Supp. 1965), provides that if the youth offender is unconditionally discharged before expiration of the maximum sentence imposed upon him, his conviction will be automatically set aside—a possibility at the time of appellant's trial in this case, since he had not served his full sentence. Appellant argues that until the possibility of discharge is absent a conviction under the Youth Corrections Act should not be admissible for impeachment. A search of the Act's legislative history has not revealed any support for this argument, however, nor is appellant's reliance on cases involving convictions pending appeal persuasive. *E.g.*, Fenwick v. United States, 102 U.S.App.D.C. 212, 252 F.2d 124 (1958). The rationale of those cases, that the appeal might render the defendant free of ever having been convicted, does not apply where a defendant has been convicted but may have it expunged from his record because of his good behavior. Nevertheless, the possibility of the discharge of a conviction under the

Appellant also claims error with respect to certain comments made by the prosecutor during closing argument. This case involved the confrontation of a Negro youth and two police officers. Focusing on this, the prosecutor warned the jury that to acquit appellant would leave the police powerless to protect against such behavior short of resort to martial law.[11]

While such an argument is always to be condemned as "an appeal wholly irrelevant to any facts or issues in the case," Viereck v. United States, 318 U.S. 236, 247, 63 S.Ct. 561, 566, 87 L.Ed. 734 (1943), and as a dereliction of the prosecutor's high duty to prosecute fairly, see Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), in the context of current events, raising the spectre of martial law was an especially flagrant and reprehensible appeal to passion and prejudice. Although the prosecutor "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v. United States, *supra*, 295 U.S. at 88, 55 S.Ct. at 633; Viereck v. United States, *supra*, 318 U.S. at 248, 63 S.Ct. at 567.

Reversed.

Youth Corrections Act would appear to be a highly relevant factor for the court to take into account in exercising the discretion contemplated by *Luck*. We need not consider whether a conviction that has been expunged may be used for impeachment. *Cf.* Tatum v. United States, 114 U.S.App.D.C. 49, 310 F.2d 854 (1962).

11. "But no matter how you twist it, no matter how you turn it, and no matter how you argue, the fact comes out that the defendant assaulted, opposed and impeded this police officer who was acting in the District of Columbia in the performance of his duties, and without any justifiable and excusable cause, whatsoever.

"Unless we reach that conclusion, ladies and gentlemen of the jury, then this city must have martial law.

\*      \*      \*      \*      \*

"Now, ladies and gentlemen, when I said in the closing argument, 'If you wished to come to that conclusion, you might as well have martial law,' I meant exactly what I said. If this is what the police officers in the District of Columbia, in a given set of circumstances, must contend with, then you, who live here and have to protect yourselves, you might as well have martial law.

"You make the choice. You live with it."