UNITED STATES of America
v.
**John L. BAILEY, Appellant.**
UNITED STATES of America
v.
**Cleveland BURGESS, Appellant.**
**Nos. 22431, 22432.**

United States Court of Appeals,
District of Columbia Circuit.
Argued Dec. 4, 1969.
Decided March 20, 1970.

12. Fed.R.Crim.P. 52(b).

Mrs. Amy Scupi, Washington, D. C. (appointed by this court) with whom Mrs. Olga Boikess, Los Angeles, Cal., was on the brief, for appellants.

Mr. Richard W. Perkins, Special Asst. U. S. Atty., of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of court, with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and William M. Cohen, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and MacKINNON, Circuit Judges.

FAHY, Senior Circuit Judge:

Appellants were convicted by a jury of robbery,[1] and assault with a dangerous weapon.[2] Appellant Bailey, in addition, was convicted of illegal possession of a sawed-off shotgun.[3]

There are two questions on the appeal: (1) whether the trial judge abused his discretion in ruling that if either defendant were to testify the court would permit his impeachment by evidence of a prior conviction and (2) whether by this ruling appellants were deprived of a fair trial in violation of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. We affirm the convictions. Judge Tamm, however, concurs only in Part I of this opinion, and Judge MacKinnon files a separate opinion concurring in Part I and dissenting in part from the discussion in Part II.

I.

The robbery occurred at a restaurant at about 1:30 a. m. some 18 months prior to the trial. The principal Government witness, a victim of the robbery, was the only one who at trial identified appellants as the robbers. He testified that when he entered the restaurant he saw that it was being robbed. He turned to leave but came back when threatened by one of the robbers with what appeared to be a sawed-off shotgun. One of the other men took his wallet, removed two ten dollar bills, and gave one to his companion. At trial the victim identified appellant Bailey as the man who had the gun and appellant Burgess as the one who took the contents of his wallet.[4]

At the conclusion of the Government's case the trial court was asked by counsel whether prior convictions would be permitted to be used to impeach the defendants' credibility were they to testify. A *Luck*[5] hearing ensued resulting in a ruling, objected to by their counsel, that

1.  22 D.C.Code § 2901.

2.  22 D.C.Code § 502.

3.  22 D.C.Code § 3214(a).

4.  The witness had observed, upon entering the restaurant, two other men participating in the robbery, but was unable to identify them.

5.  Luck v. United States, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965).

Burgess could be cross-examined on a 1959 housebreaking and larceny conviction and Bailey could be questioned about a 1962 conviction for attempted housebreaking, unless either appellant could satisfy the court that since the conviction he had led a legally blameless life. The opportunity to offer such proof was declined.

Neither appellant testified. Burgess presented an alibi defense through the testimony of two witnesses called on his behalf.[6] Bailey's defense consisted of efforts to discredit the victim's identification of him at trial by showing, through the testimony of a police officer, that it contradicted an earlier description given soon after the robbery.[7]

We consider first whether the court abused its discretion under the principles of Luck v. United States, *supra,* and subsequent decisions, by its ruling on the admissibility, in the case of Burgess, of a 1959 housebreaking and larceny conviction, and, in the case of Bailey, a conviction for attempted housebreaking in 1962.

The *Luck* inquiry at trial focused primarily upon the relevance of the prior convictions and their remoteness as bearing on appellants' credibility. This concern was warranted. In United States v. McCord, 137 U.S.App.D.C. 5, 420 F.2d 255 (1969), we have recently questioned the relevance to credibility of a housebreaking and larceny conviction. We observed that a "conviction for housebreaking, unlike one for perjury or false pretenses, sheds little light on the likelihood that the accused has lied on the stand." The trial court's ruling in the present case was made prior to *McCord.* The court accordingly sought guidance from the broader principle announced in Gordon v. United States, 127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), that the " 'rule of thumb' * * * should be that convictions which rest on dishonest conduct relate to credibility * * *." Moreover, when counsel for Burgess complained that one of the prior convictions[8] offered by the Government might be too prejudicial because of its similarity to the offense being tried, the court again referred to *Gordon,* stating that "the Court of Appeals made it quite clear that where the offense [to be used for impeachment] is the same as the offense charged in the indictment, then such conviction is to be used sparingly, if used at all." [9] *Gordon* was also relied upon to determine whether the convictions proffered by the Government were so remote as to require exclusion. The court ruled out as too remote Bailey's 1951 conviction for grand larceny and, as we have said, tendered both Burgess and Bailey an opportunity to show a legally blameless life since their respective convictions ruled to be otherwise admissible.

---

6. Burgess' mother and a neighbor testified that during the evening when the robbery occurred Burgess was at home attending a party. Both witnesses also testified that Burgess did not have a goatee, which the victim had relied upon in identifying this appellant.

7. Particular emphasis was placed on the discrepancy between the victim's report to the police describing Bailey as having dark skin, and his testimony at trial that he remembered Bailey as being light-skinned.

8. The conviction under discussion was for receiving stolen property, which was later excluded.

9. The court added that the similarity of the offense does not require the exclusion of the conviction if it is relevant and that "the Court may allow it to go to the jury, to go to his credibility." While the court did not here or elsewhere make specific reference to the test expressed in *Luck* and *Gordon,* of weighing the value of the convictions as to credibility against their prejudice, it gave sufficient indication of its awareness of this test to preclude us from finding, as appellants urge us to do, that the matter was given no consideration.

■ Appellants argue, however, that the court's discretion was too narrowly confined to "threshold inquiries" in failing to take account of whether, in the circumstances of these cases, it was of overriding importance for the jury to hear appellants' version of what transpired rather than that they remain silent because if they testified the jury would learn of their prior convictions. We find no mention in the record of the relative need for the jury to hear appellants' own story, but counsel had ample opportunity to invoke an explicit exploration of this subject and failed to do so at any point in a rather full *Luck* colloquy. He sought to make his case upon the remoteness and lack of relevance of the convictions discussed, together with the prejudicial impact of their admission. We cannot say in the circumstances of this case,[10] that the trial court abused the discretion which resides in it under our decisions.

## II.

Appellants duly raised the question of constitutionality of 14 D.C.Code § 305.[11] They contend that though consideration by the jury of evidence of a prior conviction is limited to its bearing upon the credibility of a defendant who wishes to testify, such evidence so prejudices him on the issue of his guilt or innocence of the charge on trial that its admission violates due process of law and the Sixth Amendment. This position is not bare of support.[12] Much can be said for the position that an accused on trial for one offense can fairly be found guilty only upon evidence more pertinent to that offense than a prior conviction resting on evidence altogether unrelated to the offense on trial. As a bow to this view the rule permitting the evidence to be admitted requires the court to instruct the jury to consider the evidence only in determining the weight to give the defendant's testimony should he testify, and not otherwise in reaching their verdict. The difficulty lies in the grave uncertainty, if not the impossibility, that the jury can divide their minds in this way and remain uninfluenced except as instructed. Realizing this, and because of it, the accused sometimes will not testify, thus depriving the jury of testimony which would be available but for the prior conviction.

The considerations referred to, as well as experience with the operation of the rule, led to a close examination by this court of Section 305 in the leading case of Luck v. United States, *supra*. It is there held that the admissibility of the accused's criminal record under the authority of Section 305 is more circumscribed than had been thought. A number of our cases, as well as decisions of other courts,[13] have since then passed

---

10. It bears repeating, as fully spelled out in Brown v. United States, 125 U.S. App.D.C. 220, 370 F.2d 242 (1966), that the trial court is not to exercise its discretion on the basis of abstract beliefs about the relation of prior convictions to credibility but must make its ruling on individualized considerations. From the record before us, however, we cannot say that the trial court failed in this respect as to matters brought to its attention, nor that the possible content and necessity for testimony of appellants were so plainly apparent that the court abused its discretion in failing to make a specific ruling in that respect. *See* United States v. (Joseph) Coleman, 136 U.S. App.D.C. 110, 420 F.2d 1313 (1969).

11. 14 D.C.Code § 305 provides in part that,

A person is not incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime. The fact of conviction may be given in evidence to affect his credibility as a witness, either upon the cross-examination of the witness or by evidence aliunde * * *.

12. Note, Constitutional Problems Inherent in the Admissibility of Prior Record Conviction Evidence, 37 U.Cin.L.Rev. 168 (1968).

13. The *Luck* rule has been recognized with approval by federal courts in the First, United v. Johnson, 412 F.2d 753 (1st Cir. 1969); Second, United States v. Palumbo, 401 F.2d 270 (2d Cir. 1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969), *but see*, United States v. Crisona, 416 F.2d 107 (2d

upon the appropriateness of the discretion available to the trial court in light of *Luck*.

Appellants, as I have said, now urge that we go further. They press that the unmeasurable sensitivity of a juror's mind to the influence of a criminal record cannot be eliminated by an instruction to disregard it except for the one purpose, when the jury unavoidably pass upon his present guilt under the influence of all the evidence. See in this connection the post-*Luck* opinions in Pinkney v. United States, 124 U.S.App. D.C. 209, 363 F.2d 696 (1966), and Stevens v. United States, 125 U.S.App.D.C. 239, 370 F.2d 485 (1966) (dissenting opinion). In the latter it is pointed out that Section 305 is a remnant of a discarded rule which had altogether disqualified as a witness a person who had been convicted of certain crimes. In doing away with this disqualification the new dispensation was itself qualified by the provision that if he should avail himself of the new right to testify his old criminal record would accompany him to the witness stand.

The evidentiary rule is not only clouded by doubt that a jury can or will limit their mental processes as the rule requires. It is clouded also, as our cases have held, by doubt as to what crimes, by reason of their nature, can be considered significantly relevant to the issue of the defendant's testimonial trustworthiness at a later period. The problem is further complicated by the length of time which has elapsed since the prior conviction or convictions and, also, by the kind of life the defendant has led in the intervening period, which may be many years. And then, as has been pointed out, there may be need for defendant's testimony, with cross-examination of course available. This need may not be fulfilled because of defendant's awareness of the harm he would inflict upon his defense in the case on trial by opening the door to disclosure of his prior misconduct, even though not evidence supporting the commission of the offense on trial.[14]

The ultimate question is whether in the search for truth the value of the evidence for the limited purpose for which it is admissible is outweighed by these various factors, the most important of which it seems to me is the prejudice resulting from the jury's inability to limit its influence to credibility. In the formulation of rules of evidence in the search for truth the means used as well as the end to be achieved must be acceptable. The rules are designed to protect the innocent and to convict the guilty by means which can withstand the scrutiny of right reason and experience, even if not required by the absolute necessities of due process of law.

Judge McGowan, the author of the *Luck* opinion, pondered the problem further in this later opinion in Blakney v. United States, 130 U.S.App.D.C. 87, 88–89, 397 F.2d 648, 649–650 (1968), as follows:

As its language indicates, that law [§ 305] was put on the books almost 70 years ago for the primary purpose of removing the ancient common law disqualification of persons with criminal records from testifying in either civil

Cir. 1969), cert. denied, 396 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970); Fourth, United States v. Hildreth, 387 F.2d 328 (4th Cir. 1967); Ninth, United States v. Allison, 414 F.2d 407 (9th Cir. 1969), *but see* Burg v. United States, 406 F.2d 235 (9th Cir. 1969), and Shorter v. United States, 412 F.2d 428 (9th Cir. 1969); and Tenth, United States v. Perea, 413 F.2d 65 (10th Cir. 1969), Circuits. Cf. United States v. Morefield, 411 F.2d 1186 (7th Cir. 1969). Its reception on the state level has been more

hostile. *See, e. g.,* State v. Hawthorne, 49 N.J. 130, 228 A.2d 682 (1967).

14. The court has sought a remedy for the particular objection based on loss of the defendant's testimony by ruling upon admissibility of his criminal record after weighing the need for his testimony against the value of this method of impeaching his trustworthiness should he testify. *See Luck, supra,* 121 U.S.App. D.C. at 156, 348 F.2d at 768.

or criminal cases. There is apparently no relevant legislative history, so we can only speculate as to why the attainder continued to some degree in the form of permissive employment of the past conviction to impeach credibility. The question that now should be asked is whether it should continue further at least in the case of criminal defendants who wish to testify in their own defense. [Footnote omitted.]

He said that notwithstanding the urgent need of prosecutors for expanded resources to investigate and present criminal cases effectively, the legislature should face up to such needs rather than to remain content with "cut-rate convictions gotten with the aid of prior criminal records." Judge McGowan pointed out also that as long ago as 1942 the American Law Institute proposed a Model Code of Evidence which sought to blunt this weapon in the hands of prosecutors and invariably used by them, and that the Commissioners on Uniform State Laws did the same in their 1953 proposal of Uniform Rules of Evidence. The two proposals were substantially the same. The language of the proposed Uniform State Laws is as follows:

Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. If the witness be the accused in a criminal proceeding, no evidence of his conviction of a crime shall be admissible for the sole purpose of impairing his credibility unless he has first introduced evidence admissible solely for the purpose of supporting his credibility.

Significantly, no less an authority than Professor Wigmore not only participated in the formulation of the proposal of the American Law Institute but approved its final form.

These proposals carry the implication that an instruction to the jury to consider the evidence only as it bears on credibility is inadequate to sustain the rule as now administered. Judge Learned Hand referred to such ineffectiveness many years ago in another connection, characterizing such an instruction as no more than a "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else." [15] Nash v. United States, 54 F.2d 1006, 1007 (2d Cir.) cert. denied, 285 U.S. 556, 52 S.Ct. 457, 76 L. Ed. 945 (1932). And Justice Robert H. Jackson declared in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (concurring opinion): "The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction." [16]

Coming more closely to the constitutional problem, in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court overruled its decision in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). The Court held that an instruction that a confession of a co-defendant was competent evidence only against him, though inadmissible hearsay against the other defendant, and to be disregarded in determining the latter's guilt or innocence, violated that defendant's Sixth Amendment right to cross-examination and confrontation. While recognizing that

15. Nevertheless he felt bound by the rule which accepted that gymnastic feat as performable.

16. Pertinent also is the statement in 1 B. Jones, Evidence, § 162 at 290 (5th ed. 1958), in discussing the rule which prohibits the introduction in a case on trial of evidence of wholly independent offenses:

One basic reason for the rule is that such evidence is apt to be given too much weight, rather than too little, by the jury, thus resulting in the conviction of a defendant because he is a bad man and not because of his specific guilt of the offense with which he is charged.

in some situations reliance must be placed upon the ability of the jury to follow instructions, the Court held that in other situations the risk in the jury's ability to do so is so great, and the consequence of failure so fatal to the defendant, that these practical and human limitations cannot be ignored: "The effect is the same as if there had been no instruction at all." 391 U.S. at 137, 88 S. Ct. at 1628.

The reasoning of the Court in *Bruton* is relevant to our problem. The case itself, however, did not involve the admission of a criminal record on the issue only of credibility, with an instruction so limiting its use. In any event, to transpose *Bruton* to the situation now before us would encounter the decision of the Court in Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed. 2d 606 (1967).

*Spencer* was concerned with a Texas recidivist statute under which a jury trying a pending criminal charge is permitted to consider evidence of the defendant's prior criminal behavior for purposes of sentencing but the jury is charged that such prior behavior should not be taken into account in assessing his present guilt or innocence. The Court held that this state procedure did not offend the Due Process Clause of the Fourteenth Amendment. In reaching this conclusion the Court discussed our problem involving the introduction of evidence of prior offenses for the purpose of impeaching the defendant's credibility. It was indicated that such a rule could likewise survive constitutional attack as the "conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence" and because the defendant's interests are protected by the judge's discretion and limiting instructions. *Spencer, supra,* 385 U.S. at 561, 87 S.Ct. at 652.

Chief Justice Warren and Justices Douglas, Brennan and Fortas dissented. The dissents are on the basis of belief that the state interests, said by the majority to be served by the recidivist statute, were insufficient, in view of alternative procedures, to outweigh the prejudice resulting from evidence of the prior crime. The Chief Justice in his dissent, while noting the criticism which has been aroused by the rule on impeachment of credibility, involved in our case, contrasted it with the Texas recidivist statute: "In the case of impeachment," he said, "prior convictions are considered probative for a limited purpose which is relevant to the jury's finding of guilt or innocence," and in this situation it is said that "the probative value of the evidence outweighs the conceded possibility of prejudice." *Spencer,* 385 U.S. at 577–578, 87 S.Ct. at 661.

We do not read these observations of the Chief Justice, in the context of his whole opinion, as approval of the rule involved in our case as now used by courts, but as adding weight to his position that in any event the procedure involved in *Spencer* could not rely upon the same justification and was more serious. It seems clear, however, that the *Spencer* decision, although involving state action challenged under the Fourteenth Amendment, is a barrier against a decision by us that the impeaching rule when administered in accordance with our decisions is violative of appellants' constitutional rights.

This narrows our present problem as a practical matter to whether in the exercise of our supervisory power over the administration of criminal justice in this jurisdiction [17] our court should restrict the present scope of the rule as suggested, for example, by the American

---

17. *See* Jones v. United States, 119 U.S. App.D.C. 284, 342 F.2d 863 (1964) (en banc); Smith v. Katzenbach, 122 U.S. App.D.C. 113, 351 F.2d 810 (1965); Ford v. United States, 122 U.S.App.D.C. 259, 352 F.2d 927 (1965) (en banc).

Law Institute or the Commission on Uniform State Laws, or some modification of these proposals. The Court's decision in *Spencer* would not stand in the way, since it was limited to the Fourteenth Amendment due process question.[18] The deep involvement of our court as a whole in the problem would require the exercise of this supervisory power if at all to be undertaken en banc.

Affirmed.

MacKINNON, Circuit Judge (concurring in part and dissenting in part):

I concur in Part I and in the disposition of this case but do not join in all the discussion in Part II. The intimation that D.C.Code § 14–305 is unconstitutional amounts substantially to a contention that even Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965) must be broadened. This comes at a time when the Congress is seriously considering the modification or outright repeal of the *Luck* doctrine. Trials are designed as a search for the truth and in my opinion that purpose would not be aided by permitting the testimony of convicted felons to stand on an even basis to that of honest, law-abiding citizens. "Otherwise, a defendant, secure from refutation, would have too clear a license unscrupulously to impose a false character upon the tribunal." 1 J. Wigmore, Evidence § 58 (3d ed. 1940).

---

18. The Advisory Committee of the American Bar Association on Minimum Standards has since *Spencer* recommended a rule which would depart from the practice found in *Spencer* not to violate the Fourteenth Amendment. Trial by Jury, § 4.4 at 102–3. The Committee states:

> [I]t is acknowledged by the Justices joining in that opinion that they might reach a different result "were the matter before us in a legislative or rule-making context. * * *" 385 U.S. at 567–568, [87 S.Ct. 648.] Mr. Justice Stewart, concurring, observes that "it is clear to me that the recidivist procedures adopted in recent years by many other states * * * are far

superior to those utilized in the cases now before us." 385 U.S. at 569, [87 S.Ct. 648.] The dissenters in *Spencer* emphasized that such use of evidence of prior convictions "needlessly prejudices the accused without advancing any legitimate interest of the State." 385 U.S. at 570, [87 S.Ct. 648.]

The Advisory Committee, after taking account of the opinions and analysis in *Spencer*, has reached the conclusion that the jury should not be informed of the defendant's prior convictions in advance of their verdict when that information is relevant solely to the issue of punishment.