**UNITED STATES of America, Appellee,**

v.

**Jesus ORTIZ, Defendant-Appellant.**

**No. 653, Docket 76–1460.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1977.

Decided April 11, 1977.

Richard S. Cramer, Asst. Federal Public Defender, Hartford, Conn., for appellant.

Thomas P. Smith, Asst. U. S. Atty., New Haven, Conn. (Peter C. Dorsey, U. S. Atty. for the District of Connecticut, New Haven, Conn.), for appellee.

Before MANSFIELD and VAN GRAAF-EILAND, Circuit Judges, and OWEN, District Judge.*

OWEN, District Judge.

Appellant Jesus Ortiz has been found guilty by a jury in the District of Connecticut of distributing cocaine, possessing cocaine with intent to distribute it, and conspiring to distribute.[1] He was sentenced to concurrent seven year terms on each count to be followed by three years on special parole.

At the trial, the government proved that on February 9, 1976, Rafael Valentin, an undercover Connecticut State Trooper, and

Luis Lopez, a confidential informant, went to an apartment building at 15 Cabot Street in Hartford to attempt to purchase a quarter ounce of cocaine from one "Frankie" Melendez, a brother of Ortiz' wife. There they in fact met Frankie's brother, "Kiki" Melendez, who, after ascertaining that they wanted to buy cocaine from Frankie, told them that he, Kiki, only had "bags" of cocaine and, further, that he would deal only with Lopez, but would not sell directly to Valentin.

A short while later that day, while Lopez and Valentin were seated in a car in front of a neighborhood bar, Kiki came up and reiterated that he would sell "bags" of cocaine to Lopez, but would not deal with Valentin. Kiki finally instructed Lopez to come alone to 15 Cabot Street[2] if he wanted the cocaine.

The next day, February 10, 1976, Valentin and Lopez returned to 15 Cabot Street. Lopez went upstairs alone, leaving Valentin in the car. Lopez met Kiki and agreed on a price. He went downstairs to get the money from Valentin and reentered the apartment building. Kiki then led Lopez to appellant Ortiz' third floor apartment. Ortiz was waiting for them. Ortiz asked an unidentified woman to bring him the cocaine. She returned with an aspirin tin which she handed to Ortiz. Ortiz opened the tin and counted out 15 tinfoil packets, which he handed to Kiki. After recounting them, Kiki handed the packets to Lopez. Lopez then handed Kiki the agreed-upon $180, which Kiki then handed to Ortiz, who counted it. Lopez then left and rejoined Valentin and surrendered the 15 bags of cocaine to him.

Appellant Ortiz raises two issues on appeal—the first, that it was reversible error to permit undercover officer Valentin and informer Lopez to testify as to the conversations they had had the day before the actual sale with Ortiz' brother-in-law

* Of the Southern District of New York, sitting by designation.

1. Title 21, United States Code, Sections 841(a)(1) and 846.

2. Appellant Ortiz lived in that apartment building. While neither of the Melendez brothers did, their mother also lived in the building and they were frequently on the premises.

Kiki. Appellant claims that these conversations were pre-conspiracy hearsay. The totality of the evidence, however, reasonably supports the conclusion that the conspiracy between Ortiz and his brother-in-law to sell cocaine to any trusted buyer was already in existence the day before the actual sale.[3]

■ Appellant Ortiz' second claim of reversible error is that the court abused its discretion in ruling that the government might use for impeachment purposes his 1972 conviction for two separate heroin sales entered upon a plea of guilty. This ruling, appellant asserts, caused him to forego taking the stand and testifying on his own behalf. Rule 609(a) of the Fed.R. Evid.[4] provides in pertinent part:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant."

\* \* \* \* \* \*

This rule gives broad discretion to the trial judge and its exercise should not be disturbed absent a clear showing of abuse. In the exercise of this discretion, many factors are relevant. Prime among them is whether the crime, by its nature, is probative of a lack of veracity. In *United States v. DiLorenzo*, 429 F.2d 216 (2d Cir. 1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120, (1971), we held that a prior conviction involving a crime which "reflect[s] on honesty and integrity and thereby on credibility . . ." might be used to impeach a witness. Here, the District

Judge in his discretion was entitled to recognize that a narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie. From this he could rationally conclude that such activity in a witness' past is probative on the issue of credibility.

■ *United States v. Puco*, 453 F.2d 539 (2d Cir. 1971) is distinguishable. In *Puco*, this court held that it was an abuse of discretion for the trial judge to permit the use of a 21 year old narcotics conviction for impeachment purposes.[5] While we there stated that, "a narcotics conviction has little necessary bearing on the veracity of the accused as a witness," *id.* at 543, the age of Puco's prior conviction was more determinative in reaching our ultimate decision. The court expressly cautioned that, "[w]e do not hold that a prior narcotics conviction can never be used to impeach a defendant." *Id.* at 543 n.10.[6] Indeed, we subsequently held in *United States v. Christophe*, 470 F.2d 865, 870 (2d Cir. 1972), *cert. denied*, 411 U.S. 964, 93 S.Ct. 2140, 36 L.Ed.2d 684 (1973), that a trial judge was within his discretion (citing *Puco*) in permitting the use of a narcotics conviction, where the defendant was not released from prison thereon until eight years prior to trial.

Further, we note here the trial judge's opportunity for full consideration of all the factors before exercising his discretion in ruling that appellant Ortiz' four year old narcotics selling conviction might be used to impeach. The court's final ruling was made after a conference in chambers and after testimony had been given by appellant's wife and one Arnold Samuel Worthen. Mrs. Ortiz was her husband's alibi, and testified in essence that there could not have

---

3. In any event, Kiki's remarks would have been admissible as proof of Lopez' state of mind, showing why he entered Ortiz' apartment the next day without Trooper Valentin.

4. Rule 609(a) is essentially the same as the rule in this Circuit prior to its enactment, *see* 3 *Weinstein's Evidence*, ¶ 609[03] at 609 n.2.

5. This holding is now codified in Rule 609(b).

6. The fact that the prior conviction is for the same offense requires particularly careful consideration of all the factors by the trial judge before permitting its use, but does not mandate its exclusion, *see Puco, supra*, at 542.

been any transaction of the nature Lopez had described. She said she had been in the apartment at all times in the month of February 1976 when her husband was there; that her brother Kiki had not been there that month, being *persona non grata* for breaking their television set while drunk, and the Ortizes had called the police; that she had never seen Lopez anywhere before the trial, and that he had never been in the apartment. Parts of the foregoing were supported by Worthen's testimony. Ortiz at no time made a showing as to what he proposed to testify to which had not already been testified to by them. The court was entitled to such a showing since Lopez, the government's only eyewitness, had an extensive criminal record, which was brought out by the prosecution and then thoroughly exploited on cross-examination. Lopez was even impeached on cross-examination on the basis of arrests. To have allowed appellant, if he chose to take the stand, to appear "pristine" would have been unfair and misleading to the jury. When a "case [would be] narrowed to the credibility of two persons—the accused and his accuser— . . . in those circumstances there [is] greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses [is] to be believed." *Gordon v. United States,* 127 U.S.App.D.C. 343, 383 F.2d 936, 941 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). *Cf. United States v. Jackson,* 405 F.Supp. 938, 942 (E.D.N.Y. 1975).

Under all the circumstances present, the District Court did not abuse its discretion. The judgment of conviction is affirmed.

MANSFIELD, Circuit Judge (dissenting).

I respectfully dissent for the reason that in my view it was reversible error for the district court to rule that if the defendant should take the stand in his own defense, his 1972 narcotics conviction could be used against him by the government for impeachment purposes.

Since the effort to use prior convictions for impeachment purposes in trials of narcotics cases is a daily occurrence, our ruling as to the circumstances under which the new Rule 609(a) of the Federal Rules of Evidence permits such convictions to be introduced against a defendant is of considerable significance.

In drafting Rule 609(a) Congress was torn between two conflicting interests. On the one hand, there was the interest in letting the jury have information regarding a prior conviction to the extent that it might bear on a defendant's credibility as a witness. On the other hand, there was the desire to avoid deterring the defendant, because of the obvious prejudice that might be caused by the jury's learning of his prior conviction, from testifying in his own defense, which might preclude the jury from having the benefit of his version of events. There were those in Congress who believed that a prior conviction of a testifying defendant should be admitted "only if the prior crime involved dishonesty or false statement," see H.Rep.No.93–650 setting forth the notes of the House Committee on the Judiciary, reprinted at Fed.R.Evid. 284–85 (West 1975). Indeed, after the House Committee on the Judiciary had recommended a draft along these lines, the Senate Committee on the Judiciary for a time took this view, stating that, while prior felony convictions might be introduced against "other witnesses," the danger of unfair prejudice to the accused was so great that his prior convictions should be introduced for impeachment purposes only to the extent that the prior crimes involved "dishonesty or false statement" as one of the elements of the crime itself. In adopting a modified version of the rule, for instance, the Senate Committee on the Judiciary, in Sen.Rep.No.93–1277, U.S.Code Cong. & Admin.News 1974, pp. 7051, 7061 stated:

"The committee has adopted a modified version of the House-passed rule. In your committee's view, the danger of unfair prejudice is far greater when the accused, as opposed to other witnesses, testifies, because the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of

guilt or innocence. Therefore, *with respect to defendants, the committee agreed with the House limitation that only offenses involving false statement or dishonesty may be used.* . . .

"With respect to other witnesses, in addition to any prior conviction involving false statement or dishonesty, any other felony may be used to impeach if, and only if, the court finds that the probative value of such evidence outweighs its prejudicial effect against the party offering that witness." (Emphasis supplied)

When the bill went to the Conference Committee, however, the Committee concluded "that the credibility of a witness, whether a defendant or someone else, may be attacked by proof of a prior conviction but only if the crime

"(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted and the court determines that the probative value of the conviction outweighs its prejudicial effect to the defendant; or (2) involved dishonesty or false statement regardless of the punishment." Conf.Rep. No.93–1597, U.S.Code Cong. & Admin. News, 93d Cong., 2d Sess. (1974), p. 7102.

This was the version finally adopted by Congress. As to what was meant by "dishonesty and false statement," the Committee stated:

"By the phrase 'dishonesty and false statement' the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other criminal offense in the nature of *crimen falsi,* the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully."

The Congressional debates over the adoption of the Conference Report make it clear that the burden of convincing a court that a conviction may be introduced against a testifying defendant rests upon the government. See statement of Representative Dennis during debate over adoption of the Conference Report, Conf.Rec.H. 12257 (Dec. 18, 1974); Weinstein's Evidence, Vol. III, 609–41–42, 609–67 (1975).

Applying Rule 609(a) here in the light of this legislative history, the defendant's prior conviction for a narcotics sale could not be used against him as a crime which "involved dishonesty or false statement," since there is no showing by the government, which has the burden, that fraud or dishonesty constituted elements of the prior crime itself. I therefore cannot agree with the majority that the district judge was entitled to recognize that the defendant, merely because of that prior conviction, had lived "a life of secrecy and dissembling." First, the prior conviction was just as consistent with the conclusion that he had led an honest life and that this one offense had been based upon an open consummation of one or two transactions with a friend. Second, it could be said of almost any criminal, regardless of his crime, that he lives a "life of secrecy and dissembling." The majority's extension of Rule 609(a)(2) to a case involving a bare showing of one prior narcotics conviction virtually eliminates the distinction Congress attempted to draw in drafting the Rule as it did, violating Congress' expressed intent that the dishonesty or false statement must be an element of the prior offense in order to qualify for impeachment as a crime which "involved dishonesty or false statement." The prior conviction should accordingly be held inadmissible under Rule 609(a)(2).

There remains the question of whether the prior conviction could properly have been admitted by the court as a prior felony punishable by imprisonment in cases of one year, as to which "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant." As to the probative value of the prior conviction, the record contains little or no evidence other than it occurred in 1972 and for the sale of heroin. Nor does the record show that the district court investigated the facts with respect to the conviction in order to determine whether it had probative value and, if so, whether this

outweighed its obvious prejudicial effect on the defendant.[1] We do not know, for instance, whether it was based upon one or two isolated transactions or more. The public record, of which we may take judicial notice, merely shows that the defendant pleaded guilty to two sales of heroin, one in December 1971 for 24 grams and the other in January 1972 for 11 grams.

In my view, absent further evidence, such a conviction would have such little probative value in a trial based on events occurring more than four years later that it should be governed by our decision in *United States v. Puco*, 453 F.2d 539 (2d Cir. 1971), which excluded a prior narcotics conviction on the ground that it did not have a sufficient bearing on the defendant's veracity. Although we did not go so far in *Puco* as to preclude a narcotics conviction from ever being used to impeach a testifying defendant, we did say:

"First, we do not believe that a narcotics conviction is particularly relevant to in-court veracity. . . .

"We also have indicated that crimes which involve fraud or stealing 'reflect on honesty and integrity and thereby on credibility.' *United States v. DiLorenzo*, 429 F.2d 216, 220 (2d Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971). *Accord, United States v. Palumbo, supra*, 401 F.2d at 273. Violent or assaultive crimes, on the other hand, generally are not thought to reflect directly on veracity. *Jones v. United States*, 131 U.S.App.D.C. 88, 402 F.2d 639, 643 (1968); *Gordon v. United States, supra*, 383 F.2d at 940; *Brown v. United States, supra*, 125 U.S.App.D.C. 220, 370 F.2d at 243. See *United States v. Palumbo, supra*, 401 F.2d at 274 (rape). While there is considerable uncertainty as to

what crimes, by reason of their nature, may be considered to be highly probative of lack of veracity, we believe that a narcotics conviction has little necessary bearing on the veracity of the accused as a witness." 453 F.2d at 542, 543.

The making of one or two sales of narcotics, standing alone, simply does not involve deceit and is not *crimen falsi*, as the Senate Committee on the Judiciary implicitly recognized in listing crimes that involve untruthfulness, deceit or falsification, such as perjury, criminal fraud, embezzlement, false pretenses, and various types of larceny. In view of the seriousness and growth of narcotics offenses in the United States the Congressional Committees, in their reports accompanying the bill, would surely have mentioned the sale of narcotics among the crimes that could be used for impeachment purposes if they had believed that they were relevant to a witness' veracity. Accordingly, I am persuaded on this record that, absent proof that fraud or dishonesty was involved in the commission of the earlier offense, the district court was required to exclude the prior conviction without the necessity of engaging in the balancing process required by Rule 609(a)(1). See *United States v. Millings*, 175 U.S.App.D.C. 293, 535 F.2d 121, 123 (1976).[2]

Even assuming that the defendant's prior narcotics conviction was of sufficient probative value to require the court here to engage in the weighing process, the prejudicial effect in the present case was so enormous and overwhelming as to mandate its exclusion, rendering the court's ruling an abuse of discretion. The sole substantive eyewitness against the defendant with respect to the events forming the basis of the present case was one Louis Lopez, a paid government informer who had an extreme-

---

1. Although the majority states that during the trial Judge Clarie made his "final ruling" refusing to exclude the prior conviction, the fact is that on July 12, 1976, which was two weeks before trial, he filed his memorandum decision denying the defendant "Ortiz's motion to prohibit use of prior conviction for impeachment purposes." Thus his later ruling, made when defense counsel renewed the motion on July

28th, understandably reaffirmed his earlier decision.

2. Although the government has referred us to various decisions holding narcotics convictions admissible for impeachment purposes, they all predate Rule 609(a), by which we are governed, which establishes a stricter standard.

ly unsavory background, including a string of at least 10 prior convictions, some of which did involve dishonesty or false statements, including convictions for grand larceny, automobile thefts, possession of burglary tools and transportation of stolen property.[3]

With the crucial portion of the government's case thus based on the testimony of this single witness, Lopez, it was important for the jury to hear the defendant's version of what transpired on the afternoon of February 10, 1976, particularly with respect to the meeting at which, according to Lopez, the narcotics sale was made. If appellant were required, as the price for giving his version, to reveal that he had been convicted four years earlier of selling narcotics, it is obvious that, notwithstanding instructions, there was a strong probability that the jury might improperly reason that "if he did it before, he must have done it this time also." As we said in *Puco* :

> "The propensity of Puco's narcotics conviction to 'influence the minds of the jurors improperly', *Palumbo, supra,* 401 F.2d at 273, needs little elaboration. Reference to a defendant's criminal record is always highly prejudicial. The average

jury is unable, despite curative instructions, to limit the influence of a defendant's criminal record to the issue of credibility. *Cf. Bruton v. United States,* 391 U.S. 123, 129, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The potential for prejudice, moreover, is greatly enhanced where, as here, the prior offense is similar to the one for which the defendant is on trial. *United States v. Bailey,* 138 U.S.App.D.C. 242, 426 F.2d 1236, 1240 (1970); *United States v. Hildreth,* 387 F.2d 328, 329 (4 Cir. 1967); *Gordon v. United States,* 127 U.S.App.D.C. 343, 383 F.2d 936, 940 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968); *Brown v. United States,* 125 U.S.App.D.C. 220, 370 F.2d 242, 243 (1966). As then Judge, now Chief Justice, Burger wrote in *Gordon v. United States, supra:*

> " '[S]trong reasons arise for excluding those [convictions] which are for the same crime because of the inevitable pressure on lay jurors to believe that "if he did it before he probably did so this time." As a general guide, those convictions . . . should be admitted sparingly. . . .' 383 F.2d at 940.

---

**3.** Since Lopez' bad criminal record was elicited by the government upon its direct examination of him as its principal witness, before defense counsel ever had an opportunity to go into the matter, I find no merit in the majority's suggestion that it would have been "unfair" to permit the defendant to appear as a witness of "pristine character" in his own defense. The government was not required to offer all of Lopez' convictions as part of its case and could have limited itself to those admissible under Rule 609(a). Had it done so the district court could have precluded any attempt on cross-examination to introduce those found not to bear on veracity or not to have probative value outweighing their prejudicial effect. As it was, the government's strategy made this unnecessary.

Moreover, by viewing prior convictions as relevant to a witness' "character," the majority ignores the general rule that such convictions may not be introduced to show that a witness, defendant or otherwise, is a bad person, at least not until he has sought to put his character in issue. The defendant here did not seek

to introduce evidence that he was a person of good character.

Nor do I find any support in the record for the majority's statement that Lopez was "repeatedly impeached on cross-examination on the basis of arrests" because Lopez' "rap sheet" did not clearly distinguish between his arrests and his convictions in some instances. He was first cross-examined *out of the jury's presence* for the purpose of sorting out his convictions from his arrests so that the former could properly be explored by defense counsel in the jury's presence. All of this was *after* the government had elicited most of his convictions on its direct examination. On this voir dire, which occurred out of the jury's presence, Lopez was either unable or unwilling to clarify his criminal record entirely, sometimes testifying that he had been sentenced on some of the charges and at other times stating that he had never been arrested. Faced with this confusing situation, defense counsel, when the jury was recalled, made a reasonable effort to confine cross-examination to what appear to be convictions.

"In view of the substantial likelihood of prejudice, any decision to permit impeachment by reference to convictions for crimes similar to the one for which a defendant is on trial requires particularly careful consideration by the trial judge of the probative value of the prior convictions. See *Gordon v. United States, supra,* 383 F.2d at 940; *Brown v. United States, supra,* 370 F.2d at 243." 453 F.2d at 542 (footnotes omitted).

See also *United States v. Bailey,* 138 U.S. App.D.C. 242, 426 F.2d 1236 (1970); Weinstein's Evidence, 609–71.

Although the prior conviction in *Puco* was much older than that here, our observations there apply with equal force to this case. If, as appears to have been the fact, Ortiz' prior conviction was for two sales of narcotics without any fraud or falsification involved, it could not have had any appreciable bearing on the defendant's credibility as a witness and, in view of its great potential for prejudice to the defendant, it was an abuse of discretion to admit it.[4]

For these reasons I would reverse.

---

[4]. The district court's reaffirmation of its ruling after the appellant's wife and Arnold S. ("Sam") Worthen testified is of no significance, since the court had already made its decision and neither of these witnesses shed any light on the February 10, 1976, meeting at which, according to Lopez, the narcotics sale was made.

Mrs. Ortiz merely testified that her husband and Kiki Melendez (her brother) were not on speaking terms at the time of the events because of a family dispute caused by her calling in the police when another brother, Frankie Melendez, broke the Ortiz' television set. Although she testified that she and her husband (appellant) were always together, she would not swear unequivocally that on the afternoon of February 10, 1976, her husband had not been with Kiki Melendez. Thus it is possible that appellant would have testified to additional facts shedding light on whether the alleged sale occurred. But even if his testimony had been limited to substantial corroboration of that given by his wife, the jury, after appraising his credibility as against that of Lopez, may have believed appellant or at least have had a reasonable doubt as to his guilt.