**UNITED STATES of America**

v.

**James L. ISAAC, Appellant.**

**Nos. 22713, 23089.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 10, 1970.

Decided June 2, 1971.

---

7. P. 1032, n. 35 *supra.*

See also D.C.Cir., 442 F.2d 119.

———◆———

Mr. Kenneth H. Liles, Washington, D. C. (appointed by this Court) and Mr. Frank J. Martin, Jr., Washington, D. C., for appellant.

Mr. Harvey S. Price, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and James R. Phelps, Asst. U. S. Attys., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant and his codefendant were convicted of second degree burglary, 22 D.C.Code § 1801(b) (Supp. IV, 1971), and petit larceny, 22 D.C.Code § 2202 (1967). Appellant was sentenced to four to twelve years on the burglary count, and one year (to run concurrently) on petit larceny. His codefendant was sentenced to nine to twenty-seven months.

The only issue that merits consideration is the permissibility of impeachment of appellant through prior convictions.

The circumstances surrounding the arrest of the two men were as follows:

On a late Sunday afternoon in July, 1968, the police received a report that a two-story building housing a public accounting business had been broken into. A scout car was dispatched to the scene immediately. One of the officers, Officer Heath, walked to the rear of the building, where he observed a twelve-foot ladder leaning against the building next to a broken window. While he was there, appellant's codefendant ran out the front of the building, carrying an adding machine which was later identified as the property of the operator of the accounting business. Sergeant Yatty, stationed at the front of the building, apprehended him. Meanwhile, Officer Heath saw a man stick his head out of the broken rear window. Though ordered to come down, the man disappeared back into the building. Very shortly thereafter, Sergeant Yatty noticed appellant standing just inside the front of the building. He ordered him out and placed him under arrest. The officers noticed scattered pedestrians near the front of the building at the time, but saw no one else.

Appellant was the sole witness in his own defense, which was based on a lack of intent to steal and a lack of association with his co-defendant. In explanation of his presence in the building, he claimed that he had gone in to chase out a group of neighborhood children who

had entered the building and were being destructive. Though he had chased most of them out, one had broken free and returned. Appellant pursued this last one to the second floor; he admitted seeing Officer Heath from the rear window, but denied hearing an order to come down.

Appellant testified that he did not know Holly at all, and that he had told the police following his arrest that he did not know him. He also told the police at that time about his attempts to chase out a group of children.

At trial, defense counsel questioned the introduction of prior convictions in the event defendant took the stand. With respect to appellant, the trial judge ruled that he would permit impeachment by the use of two two-year-old offenses: attempted housebreaking and petit larceny. The judge said:

> I think those type of crimes reflect on his trait of character, has to do with honesty, cheating or stealing or anything like that, those are the type crimes I think should be received in connection with his credibility as a witness. I will permit you to use those. (Tr. 60.)

Under cross-examination, appellant admitted the prior conviction for attempted housebreaking,[1] and the trial judge promptly cautioned the jury as to the proper weight that might be given such testimony.

Our decision in United States v. White, 138 U.S.App.D.C. 364, 427 F.2d 634 (1970) points out that while housebreaking is not "so directly related to the likelihood of false testimony as a conviction for, say, perjury or obtaining money under false pretenses," a conviction for housebreaking is usable as impeachment where the housebreaking was to commit the crime of larceny (although not where it was, say, to commit a rape). Here the attempted housebreaking related to an intent to steal. See also, Bowles v. United States, 142

U.S.App.D.C. 26, n. 7, 439 F.2d 536, n. 7 (Nov. 20, 1970) (en banc), cert. denied, 401 U.S. 995, 91 S.Ct. 1240, 28 L. Ed.2d 533 (1971).

Where the impeaching conviction is for the same (or substantially the same) crime as the felony now being charged a problem of strong prejudice arises. This court stated in Gordon v. United States, 127 U.S.App.D.C. 343, at 347, 383 F.2d 936, at 940 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L. Ed.2d 287 (1968):

> "A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity." (footnote omitted)

Here there are multiple convictions. Under *Gordon* the trial judge was admonished to admit as impeachment a conviction for a non-similar crime. The difficulty is that both the convictions which the judge found usable for impeachment—attempted housebreaking and larceny—were crimes with which Isaac was now charged.

It may be assumed that both these convictions did not relate "directly" to veracity. Does this mean they were both inadmissible? If so, it means that the defendant would be impeachable if on trial only for housebreaking (through the larceny conviction), but could not be

---

1. The Government chose not to question him about the petit larceny conviction.

impeached here because on trial for two crimes.

This is a logically possible outcome but I think it goes too far. What the court laid down in *Gordon* was a general guide and a possible solution. And what *Gordon* says in the quotation above must be taken in conjunction with fn. 11 of *Gordon* where the court said that even in a case where the defendant's testimony is important, so that it should be heard, it would have to engage in a weighing process in which the judge "may want to evaluate just how relevant to credibility the prior convictions are; for example, a recent perjury conviction would be difficult to ignore even where the defendant's testimony would be of great importance. This could well be true as to a multiplicity of convictions for crimes of dishonesty referred to earlier." (127 U.S.App.D.C. at 348 n. 11, 383 F.2d at 941 n. 11.)

■ What *Gordon* teaches is this: Where defendant's testimony is needed he is not to be impeachable with a conviction for a similar crime if another conviction is available for impeachment. If the only conviction available for impeachment is the same crime, and it is not for a crime "directly" relevant to credibility, it should not be used if it is the only conviction of defendant that is not "remote." But if there are two or more convictions for crimes of dishonesty that are not remote, then this provides a basis for impeachment—notwithstanding the possibility of prejudice that the jury will transfer from the impeachment to the same crime now being charged.[2]

■ The trial judge erred in allowing two impeachments of the same crime. Under *Gordon* he should not have allowed more than one. But since the prosecution only used one, no prejudice appears from this.

Affirmed.

BAZELON, Chief Judge (dissenting):

I

Though the trial judge took pains to follow our decisions in *Luck* [Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763] and *Gordon*, I do not think that this court should affirm his decision to allow cross-examination on the prior offense of attempted housebreaking. This court has held that such a crime is relevant to credibility,[1] and I do not deny that appellant's credibility was a major issue at trial. Nevertheless, the case presents an unusual accumulation of the factors which we have held militate against admitting testimony of prior offenses.

First, this was not a classic "credibility contest," in which all the jury need do is choose whether to believe the Government's witnesses or the appellant.[2] Given the circumstances here, a juror might give little credit to appellant's story, but wonder if the Government witnesses' testimony proved every element of the offenses charged beyond a reasonable doubt. Second, a conviction for attempted housebreaking is not "so directly related to the likelihood of false testimony as a conviction for, say, perjury or obtaining money under false pretenses."[3] Third, appellant was im-

---

2. If the prosecution insists on such impeachment in a case and defendant stays silent, it may not be entitled to the instruction of inference from unexplained possession of stolen property. See Smith v. United States, 123 U.S.App.D.C. 259, 359 F.2d 243 (1966) cited in fn. 11 of *Gordon*.

1. Gordon v. United States, 127 U.S.App. D.C. 343, 347, 383 F.2d 936, 940 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968); Gass v.

United States, 135 U.S.App.D.C. 11, 416 F.2d 767, 773 (1969).

2. *See, e. g.*, United States v. McCord, 137 U.S.App.D.C. 5, 420 F.2d 255 (1969).

3. United States v. White, 138 U.S.App. D.C. 364, 427 F.2d 634 (1970). *See also* United States v. McCord, *supra*: "A conviction for housebreaking, unlike one for perjury or false pretenses, sheds little light on the likelihood that the accused has lied on the stand."

peached with a conviction for an attempt to commit the same offense with which he was charged at trial. As the opinion of the court recognizes, this court has often acknowledged the special dangers present when such a conviction is introduced to impeach a criminal defendant.

Because these factors come together in this case, I do not see how we can rely on a limiting instruction to overcome the prejudicial impact of allowing appellant to be impeached with an attempt to commit the same offense with which he is charged.[4] The court is apparently troubled by the realization that the theory of this dissent has the consequence that appellant could have been impeached with *neither* of his prior convictions. I find this result not only "logical"[5] but strictly in keeping with the policies underlying the *Luck* line of cases.

## II

Beside the *Luck* issue, I think a serious question is presented by the sentencing proceedings in this case. Appellant's codefendant, named Holly, was sentenced on December 20, 1968, about two months after the trial. At the end of that very brief proceeding, the trial judge spoke as follows:

> THE COURT: I know and he knows that I have to take into consideration that he was convicted back in 1960 on the charge of petit larceny and placed on probation; that is the most serious offense.

> I am going to give what I think is a light sentence in this case. I cannot put him on probation.

All right. Do either one of you want to say anything else?

(NO RESPONSE)

*Taking into consideration that he would have pleaded guilty* [6]—did he take the stand in the case?

[DEFENSE COUNSEL:] No, he did not, Your Honor.

THE COURT: *He did not lie about it. I will take that into consideration.* [Emphasis added.]

Thereupon the judge sentenced nine to twenty-seven months for burglary, and one year (to run concurrently) for petit larceny.

Two weeks later, on January 3, 1969, the same trial judge sentenced appellant to four to twelve *years* on the burglary count, and one year (again to run concurrently) for petit larceny. Appellant argues that the quoted statements from the Holly proceedings indicate that the judge gave appellant a longer sentence than Holly because appellant was the one who had insisted upon a trial and testified falsely—in the jury's eyes—in his own behalf. As further support, appellant points out that he is two years younger than Holly and that it was Holly, not he, who was arrested with the stolen adding machine in his arms. For the relevant law, he cites our decision in Scott v. United States, 135 U.S.App.D.C. 377, 419 F.2d 264, 269 (1969), in which we held that a trial judge may not sentence a defendant more harshly either because he has apparently perjured himself on the stand, or because he has demanded a jury trial.

In reply, the Government remarks that appellant was sentenced *before* the Scott decision came down, but its main

---

4. This court has remarked before on the questionable effectiveness of limiting instructions which tell the jury to consider certain testimony only on the issue of credibility. United States v. Bailey, 138 U.S.App.D.C. 242, 426 F.2d 1236, 1241 (1970).

5. See opinion of the court at 1043 *supra*.

6. Holly's counsel had just told the judge that

> "Mr. Holly was, at all times, ready to plead in this case but the Government counsel apparently did not have the authority to accept the plea unless both defendants were ready to go along with this and, therefore, a trial was to be held. I would like to point out that this did not cost the Government any extra delay or expense."

response is that the record of appellant's sentencing proceedings gives no indication at all that an improper factor was relied upon.

It points to the fact that the trial judge took pains to put on the record the reasons for his sentence.

> Now, what I am about to say I want to put this on the record so the Court of Appeals will understand why I am imposing the sentence I am imposing should this case be appealed, and also the defendant will be interested to know why I am going to impose a substantial sentence. It is not being said for the purpose of embarrassing him, maybe if there are any errors I'd like him to tell me.

After this forthright statement, the trial judge orally went through appellant's criminal record, dating back eleven years. This record included convictions for assault, carrying a dangerous weapon, destroying private property, attempted housebreaking, petit larceny, besides several drunk and disorderly charges. It is a substantially longer record than Holly's, and with more serious offenses on it.

The Government is clearly correct to say that the record of appellant's sentencing—standing alone—gives no indication that the trial judge was influenced by an impermissible factor. The question, then, is whether we can infer that an impermissible factor may nevertheless have been at work, because of what the trial judge said two weeks earlier at the time of Holly's sentencing.

Did the trial judge make it plain there that he would *always* take into account whether a defendant insisted on a jury trial and lied on the stand? Appellant does not ask us to draw such a conclusion from two statements offered as reasons for leniency at a single sentencing proceeding. Rather, he says that since the statements in question were made at a *codefendant's* sentencing, there is rea-

son to infer that similar considerations were at work when the other defendant was sentenced.

Given the circumstances of the offense and the disparity between the sentences given to Holly and appellant, this argument would seem immediately compelling if appellant's sentencing proceeding presented a barren record. If we were forced to speculate about the trial judge's reasons for sentencing appellant, we would find it impossible to exclude the possibility that he applied the same standards he acknowledged in sentencing Holly. The record before us is not entirely barren, for the trial judge seemed to be trying to make it clear that he was sentencing appellant to four to twelve years because of his long criminal record. He did not indicate whether the purpose of the longer sentence was to penalize appellant for his repeated criminal conduct, to provide a longer opportunity for rehabilitation, or to deter appellant or others from similar criminal behavior—information which, if generally supplied, would aid both judges and the public in evaluating criteria for sentencing. But in the present state of the law, a trial judge is not generally required to give such a specific statement of his reasons for sentencing.

The question remains, nevertheless, whether the trial judge's apparent effort to explain his sentence was sufficient to dispel the possibility that appellant's sentence rested, in part at least, on the impermissible considerations voiced at Holly's sentencing: that appellant was the one who insisted on a trial and who lied on the stand. Taking into account all the features of the two related proceedings, I feel bound to conclude that the reasonable possibility of error has not been dispelled. Resentencing proceedings typically are no heavy burden upon the judicial system; I would remand this case to afford the District Court an opportunity for clarification or resentencing.