UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael T. MARTINEZ,
Defendant-Appellant.

No. 76–2965.

United States Court of Appeals,
Fifth Circuit.

July 15, 1977.

Daniel R. Rutherford, San Antonio, Tex., (Court-appointed), for defendant-appellant.

John E. Clark, U. S. Atty., LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This is an appeal arising out of the same transaction as is the subject matter of *United States v. Martinez*, 555 F.2d 1269 (5th Cir. 1977). On August 13, 1975, defendant, Michael T. Martinez, and Joseph Daniel Muro were charged with conspiring to distribute cocaine in violation of 21 U.S.C.A. §§ 841(a)(1)[1] and 846.[2] Defendant was convicted by a jury and sentenced to 10 years imprisonment with a special parole term of 10 years. The trial court directed that this sentence was to run *consecutively* to any sentence that defendant was then serving. We reverse.

The facts and circumstances giving rise to the present conviction were summarized in No. 76–3431 and will not be repeated here. At the second trial, however, Jose Rene Flores testified as a government witness in the role of an unindicted co-conspirator. Flores testified that he used defendant and co-defendant Muro, as his sources of cocaine. Flores testified that defendant and Muro operated out of the Coin Pub and that he discussed agent Henderson's drug order with them. Flores stated that he obtained the one-half gram sample shown to agent Henderson on August 7, 1974, from defendant. After the meeting with agent Henderson, Flores stated that he called defendant and notified him of the arrangements for the delivery of the cocaine. Back at the Coin Pub a "runner" delivered the cocaine to defendant. Defendant then gave the cocaine to Flores and told him that he and Muro would follow him to the delivery site to insure that no one stole the merchandise.

Defendant also took the stand in his own defense. He related the circumstances surrounding his acquaintance with Flores and denied that he had ever discussed narcotics with Flores. Both defendant and Muro, who also took the stand, testified that they had agreed to go to the shopping center with Flores to do some shopping. They denied any participation with Flores in the narcotics deal. Defendant also denied that he had ever confessed that he was acting as a lookout for Flores while the deal was made and was to receive $500.00 for his part. Since the trial court had already ruled that defendant could be impeached with his earlier conviction for aiding and abetting, defense counsel revealed on direct examination that defendant was convicted in a bench trial on another charge arising out of this same transaction. Otherwise, the evidence presented substantially corresponded with that given at the first trial.

Defendant contends that the trial court erred in allowing his earlier conviction for aiding and abetting to be used to impeach his credibility at his second trial. While recognizing that the general rule is that prior convictions may be used to impeach credibility, Fed.R.Evid. 609(a), defendant argues that the use of his conviction for an offense arising out of the same transaction for which he was presently on trial was highly prejudicial and that the prejudice far outweighed the probative value of the evidence. In effect, defendant claims that the jury's knowledge that he had previously been convicted on the basis of the identical transaction could not possibly have been used by the jury solely to reflect on his credibility but must necessarily have been used by them as evidence that he committed the crime in question—a legally impermissible inference. We agree.

■ For the purpose of attacking credibility, evidence that a witness has previously been convicted of a crime is admissible if "the court determines that the probative

---

1. (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
. . .

2. Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

value of admitting this evidence outweighs its prejudicial effect *to the defendant."* Fed.R.Evid. 609(a) (emphasis added). Implicit in this balancing approach is recognition of the fact that the danger of unfair prejudice is far greater when the accused, as opposed to other witnesses, testifies, because the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of guilt or innocence. *See* S.Rep. No. 93–1277, 93rd Cong. 2d Sess., reprinted in U.S. Code Cong. & Admin. News, pp. 7051, 7061–7062 (1974). The danger of prejudice to a nondefendant witness was rejected altogether as a consideration in the balance in favor of allowing the trier of fact to have as much relevant evidence on the issue of credibility as possible. *See* H.R.Conf.Rep. No. 93–1597, 93rd Cong., 2d Sess., reprinted in U.S. Code Cong. & Admin. News, pp. 7098, 7102–7103 (1974).

■ The rationale for admitting prior conviction evidence for impeachment purposes is that the jury should be informed about the character of a witness who asks the jury to believe his testimony. *United States v. Garber,* 471 F.2d 212, 215 (5th Cir. 1972). "The record of prior convictions is considered indicative of the defendant's criminal nature which, in turn, suggests a propensity to falsify his testimony: '[t]he reason for disbelieving the witness is his supposed readiness to lie inferred from his general readiness to do evil which is predicated upon his former conviction of a crime.'" *Id.,* quoting, Ladd, Credibility Tests-Current Trends, 89 U.Pa.L.Rev. 166, 176, (1940). Notwithstanding criticism of the validity of the assumption, particularly with regard to crimes which do not involve inherent falsity, *see Gordon v. United States,* 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), the rule is firmly entrenched in our jurisprudence.

■ When the accused takes the stand, however, the Congressional history of present Rule 609 and common sense dictate that evidence of prior convictions to impeach credibility be cautiously received lest the defendant be improperly preju-

diced. This danger of undue prejudice arises because impeaching evidence in the form of prior convictions must be distinguished by the jury from substantive evidence.

Although prior conviction evidence should be used only for evaluating the defendant's credibility, available empirical studies seem to indicate that jurors may often be unable to divorce completely this evidence from the material issues. The resulting mental confusion may lead the jury to consider the prior conviction evidence improperly, either as conclusive of defendant's general criminal tendencies or as indicative of guilt in the particular circumstances on trial. Moreover, the actual effect of the standard limiting instruction, by which the Court instructs the jury to limit its consideration of the prior conviction evidence to credibility purposes only, has long been viewed with skepticism: "Thus, with a wave of the evidentiary wand, what previously was too prejudicial to be heard by the jury becomes reliable, valid evidence." Hence a growing number of judges and commentators articulate a concern for the probative value of prior conviction evidence, especially when juxtaposed against its prejudicial effects on the jury. The evidence may not always reflect directly upon credibility, and the jury may not always have the mental discipline to consider it only for impeachment purposes.

*United States v. Garber, supra* at 215 (footnotes omitted). Because of the inherent difficulties with the use of prior convictions to impeach the accused, some prophylactic rules have been developed by courts in an attempt to ameliorate the danger of undue and improper prejudice. *See United States v. Isaac,* 145 U.S.App.D.C. 378, 449 F.2d 1040 (1971) (exclude similar crime evidence to impeach if another conviction available); *Gordon v. United States, supra* (same); *United States v. Palumbo,* 401 F.2d 270 (2d Cir. 1968), *cert. denied,* 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); *but see United States v. Bray,* 445 F.2d 178 (5th Cir.), *cert. denied,* 404 U.S. 1002, 92 S.Ct.

571, 30 L.Ed.2d 555 (1971) (contra); *Bendelow v. United States*, 418 F.2d 42 (5th Cir. 1969), *cert. denied*, 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970) (contra); *United States v. Garber*, 471 F.2d 212, 218 (5th Cir. 1972) (Godbold, J., concurring) (limit proof of prior convictions).

■ With these observations in mind, we must determine in the instant case whether the trial court abused its discretion in allowing defendant to be impeached with his prior conviction for aiding and abetting arising out of the identical transaction for which he was then on trial. While the test to be applied by the trial court necessarily involves the exercise of a broad discretion, we must review the decision on appeal by the application of the same test, i. e., probative value versus prejudicial effect, with an emphasis on the rights of an accused to a fair trial.

■ The probative value of evidence is merely its tendency to persuade the trier of fact on a given issue. So, we cannot review the probative value of the prior conviction evidence apart from consideration of the issue for which the evidence is supposed to persuade the jury. In this case our inquiry turns to the tendency of the prior crimes evidence to persuade the jury that defendant was not a credible person.

Likewise, it is difficult to consider the prejudicial effect of any evidence in the abstract. Evidence is meant to be prejudicial in the broad sense. Our inquiry in this regard must also turn to a consideration of the tendency of the prior crimes evidence improperly to persuade the trier of fact on an issue. Thus, we must determine the tendency of the prior conviction evidence to persuade the jury that defendant probably committed the crime charged on trial or its tendency to persuade the jury that defendant was simply a "bad man" and probably deserved to be in jail.

The value of the evidence insofar as it tended to cast doubt upon the defendant's credibility was slight. The rationale of the rule allowing impeachment by the use of former convictions is that unbelieveability may be inferred from defendant's general readiness to do evil. Prior convictions may indicate the accused has a criminal nature and thus, has a propensity to falsify his testimony. In the instant case the prior conviction arising out of the identical transaction which was the subject matter of the present trial fits neither mold. In short, defendant's credibility was attacked by the use of his *present* conviction. His "prior conviction" was no more indicative of his "general readiness to do evil" or of his "criminal nature" than is the fact of conviction indicative of credibility upon appellate reversal and retrial. The idea that the prior conviction in this case was probative on the issue of defendant's credibility is a "bootstrap" argument. In the sense that this transaction represents defendant's first "brush with the law," he has no history of a general readiness to do evil or of a criminal nature. His conviction of aiding and abetting was temporally "prior" but, insofar as the factual and legal setting is concerned, the former conviction was contemporaneous.

■ On the issue of prejudicial effect, it was legally impermissible for the jury to base a conviction on the inference that because defendant was previously convicted of a crime, he probably committed the crime presently charged. Yet, on this issue we can hardly conceive of a more prejudicial prior conviction. The jury has just been told that a former fact-finder considered the identical factual circumstances and concluded that defendant was criminally culpable. The evidence in this case bordered on directing a verdict against the accused. While aiding and abetting and conspiring are distinct and separate offenses, *United States v. Clements*, 484 F.2d 928 (5th Cir. 1973), *cert. denied*, 415 U.S. 991, 94 S.Ct. 1591, 39 L.Ed.2d 888 (1974); *see also United States v. Peterson*, 524 F.2d 167, 174 (4th Cir.), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976), defendant's right to have the jury determine that the government has properly proven every essential element beyond a reasonable doubt was improperly prejudiced by the introduction of the former convic-

tion. We conclude that under the circumstances of this case it was an abuse of discretion for the trial court to allow defendant to be impeached with the fact of his former conviction arising out of the identical factual circumstances and involving many of the identical elements as the offense presently on trial.

Defendant also asserts that the trial court erred by not conducting a voluntariness hearing in conformity with *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) prior to admitting defendant's statement in evidence. As we noted in the companion case the court determined the voluntariness of defendant's confession in conjunction with the earlier bench trial. There was certainly no need for another voluntariness hearing prior to introducing the statement at the second trial to the jury.[3]

REVERSED and REMANDED for a new trial.

---

3. Our review of the record in this case compels us to note that the propriety of introducing defendant's confession upon retrial should be considered in light of *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977) and *United States v. Ross*, 493 F.2d 771 (5th Cir. 1974). We, of course, express no opinion on the merits of the issue raised by those decisions.