UNITED STATES of America,
Plaintiff-Appellee,

v.

Don Raymond POTEET,
Defendant-Appellant.

No. 77–5345.

United States Court of Appeals,
Fifth Circuit.

May 22, 1978.

Rehearing Denied June 26, 1978.

William M. Ravkind, Jerry W. Biesel, Dallas, Tex., for defendant-appellant.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Judith A. Shepherd, H. Jay Ethington, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, RONEY, and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Dan Raymond Poteet appeals from the jury verdict and judgment finding him guilty as charged of having unlawfully sold firearms in a business capacity without a dealer's license in violation of 18 U.S.C. §§ 922(a)(1) and 924(a).[1] We affirm.

## THE FACTS

In the early months of 1975, a special agent of the Bureau of Alcohol, Tobacco and Firearms, Bobby Curtis, was operating in an undercover capacity under the name of Bobby Van. Initially, he was investigating one Kenneth Griffin, the manager of the Two Sisters Lounge, which was owned by the defendant.

While pursuing the investigation, Griffin offered Agent Curtis an opportunity to purchase a .38 caliber revolver. When Curtis indicated an interest in purchasing weapons, Griffin introduced him to the defendant.

Curtis told defendant that he was opening a pawn shop, gunshop, or the like and needed to purchase firearms. Defendant stated that he was interested in selling the .38 caliber revolver. He invited the agent to his house that evening.

While at defendant's home, the agent and defendant engaged in conversation about firearms. In addition to the revolver, the defendant offered the agent four additional weapons. The agent purchased all of them.

Thereafter, through a period ending on June 20, 1975, the agent made further purchases of firearms from the appellant. Approximately 25 firearms were purchased in all.

During one occasion when the agent purchased four weapons, the defendant told him that three of the guns were "clean" and the other one was "from out of town." These turned out to have been stolen weapons.

On June 20, 1978, defendant was arrested by Agent Curtis. Thereafter, defendant was charged and tried in the state courts of Texas with receiving stolen property, the four guns sold to Curtis. The defendant was found guilty of that charge and received a probated sentence.

On December 4, 1976, defendant was indicted for the offense under consideration here. He pled not guilty and proceeded to trial by jury.

At trial, the defendant readily admitted that he had no license and that he had engaged in the business of selling firearms to Agent Curtis. His sole defense was one of entrapment. Defendant contended that he had no predisposition to sell firearms as a business before meeting Agent Curtis. The jury found otherwise and this appeal followed.

---

1. 18 U.S.C. § 922(a)(1) provides:

It shall be unlawful—(1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce;

The penalty for violation of the above statute is provided in 18 U.S.C. § 924(a):

Whoever violates any provision of this chapter . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both.

## ISSUES ON APPEAL

Defendant raises three enumerations of error. These are:

(1) That he was impermissibly prejudiced by the use as impeachment of the state theft conviction.

(2) That he was unfairly prejudiced by the assertion of a Government witness that defendant had contracted to have the witness physically assaulted.

(3) That the trial judge abused her discretion in denying defendant's request for a continuance.

### I.

Impeachment by the State Conviction.

■ Prior to trial, the defendant brought a motion in limine seeking to prevent the prosecution from using the state theft conviction as impeachment evidence in the event the defendant testified. The motion was denied.

In his opening statement, defendant's attorney, foreseeing the subsequent use of the theft conviction when the defendant testified, informed the jury of the earlier conviction, its alleged deficiencies, and that it was being appealed. When the defendant took the stand, the prosecution, as expected on cross examination, impeached the witness with his prior conviction.

Defendant in his first enumeration contends that the introduction of the prior offense was reversible error. Defendant recognizes that, as a general matter it is clearly permissible to impeach a defendant who testifies by proof of his prior conviction(s). Defendant, however, contends that the theft conviction for receiving the stolen guns was part of the same transaction as the sale of the guns to the agent. On this premise, defendant contends that the prosecution was impermissibly allowed to use the conviction in a manner we recently found to be erroneous in *United States v. Martinez,* 555 F.2d 1273 (5th Cir. 1977).

In *Martinez,* the defendant was charged and convicted of aiding and abetting the distribution of cocaine in violation of 18 U.S.C. § 2. Following that conviction, the Government charged the defendant with conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Both charges arose out of identical factual circumstances. We agreed with *Martinez* that the use of the aiding and abetting conviction as impeachment in the conspiracy charge, which arose out of the same transaction, was highly prejudicial; that the prejudice far outweighed the probative value of the evidence; and that, in effect, the jury's knowledge that Martinez had previously been convicted on the basis of the identical transaction could not possibly have been used by the jury solely to reflect on his credibility but must have been used by the jury as evidence that Martinez committed the crime in question.

In the instant case, defendant argues that the use of the state theft conviction as impeachment in the current case falls within the prohibition of *Martinez.* We disagree.

In *Martinez,* the issues, evidence, and factual circumstances for both charges were virtually identical. In those unique circumstances, we found that the defendant was impeached by evidence of a conviction for essentially the same acts as those for which he was being tried.

In contrast, the instant charge and the previous state conviction did not involve the same elements, issues or defenses. The only connection between the two charges was that four of the weapons sold to the agent were stolen weapons. The jury was properly instructed to confine the use of the theft conviction solely as impeachment evidence reflecting upon the defendant's credibility. We find defendant's enumeration of error lacking in merit.

### II, III

The Assertion of the Witness; the Denial of the Continuance.

■ Defendant's sole defense to the charge of selling firearms in a business capacity without a license was one of entrapment. Following the presentation of the Government's case in chief, the defend-

ant took the stand. The defendant testified that, until he met Agent Curtis, he had never sold firearms to anyone in a business capacity but rather was a gun collector who in the pursuit of his hobby occasionally sold weapons. The defendant thereby placed his predisposition into issue when raising his entrapment defense.

To counter the defendant's assertion of lack of predisposition, the prosecution called Kenneth Griffin as a rebuttal witness. On direct, he testified that the defendant had previously sold guns in a business capacity and that he had acted as defendant's agent in the acquisition of firearms.

On cross-examination, defense counsel sought to discredit Griffin's testimony. Defense counsel elicited from Griffin that he had been arrested for selling firearms to Curtis and that the state prosecutor had recommended a term in prison but that this recommendation had subsequently been changed after Griffin had testified against the defendant in state court. Griffin received probation.

Defense counsel repeatedly questioned Griffin as to whether a deal had been made in exchange for his testimony against the defendant. During part of the exchange, defense counsel asked the witness whether he had told the state court jury in Poteets' state trial that the prosecution had recommended that he get three years in the penitentiary; but that he in fact only received probation. The following exchange occurred:

MR. RAVKIND: My question, Your Honor, is whether or not the Federal Government along with Dallas County made a deal for him.

MR. ETHINGTON: Judge, I can say that right now. We didn't.

THE COURT: That isn't the question you asked and I instruct the jury to disregard your remark.

Q. (By Mr. Ravkind) Now, you were filed on in State Court as a result of selling the firearms to this Agent, weren't you?

A. Yes, sir, I was.

Q. And have you gone to jail for that?

A. Have I gone to jail for that?

Q. Yes.

A. I stayed in jail for I think ten days.

Q. Okay. But when are you going to the penitentiary for that offense?

A. I am not. I am on probation for that.

Q. Are you?

A. Yes, sir.

Q. Didn't you tell that jury down there when you were questioned about this that the State was going to recommend three years in the penitentiary?

A. Yes, sir, that is right.

Q. But you didn't go to the penitentiary?

A. No, sir, I did not.

Q. They changed that recommendation all of a sudden?

A. Yes, sir, they did.

Q. But that jury down there—

THE COURT: What jury are you talking about?

MR. RAVKIND: The jury down there. I am talking about the State Court jury. The same thing was brought up to the State Court jury.

THE COURT: All right. I am just trying to find out what jury you are talking about down there.

Q. (By Mr. Ravkind) You remember being cross-examined by Mr. Taylor?

A. Yes, sir.

THE COURT: Find a question and ask him about it.

MR. RAVKIND: He hasn't denied anything yet, Your Honor.

Q. (By Mr. Ravkind) You recall being cross-examined by Mr. Taylor about your situation?

A. Yes, I do.

Q. You sat there and looked the jury right in the eye and you said "No, Mr. Taylor, that is not true. It is the prosecutor in the case who is going to recommend I go to the penitentiary for two years." That was a big thing in that case?

A. No, sir, I didn't.

Q. You didn't?

A. *A contract was put out on me by Mr. Don Poteet. They beat me in the head with a shotgun and beat my wife up, beat us up and captured us and was loading us in the truck and taking us for a ride. The reason I know who paid them to do all this because the men stood there and told me who was putting out the contract on me and who was behind it, paying them to beat us up.* (emphasis supplied)

Q. But until that happened they were going to put you for two years in the penitentiary. That is the most amazing thing I have ever heard.

MR. RAVKIND: It is unresponsive, Your Honor, but I am going to proceed into this. . . .

Defense counsel thereafter directed inquiry into the circumstances of the alleged "contract," attempting to discredit the witness' allegation and, no doubt by so doing, hoping to discredit everything to which the witness had testified.

On appeal, defendant raises two contentions. The first is that the answer was unresponsive, and was so prejudicial that it deprived the defendant of a fair trial. Defendant's second contention is that the trial judge abused her discretion in refusing to grant defendant a continuance in order that defense counsel could seek evidence to impeach that portion of the witness' testimony. We disagree.

At the outset, we differ to an extent with defendant's characterization of the witness' answer as unresponsive. On cross-examination, defense counsel repeatedly tried to impeach Griffin by developing the inference that Griffin and the state and federal prosecutors had made a deal, insinuating that, in exchange for Griffin's testimony against defendant, Griffin, a previously convicted felon, had received probation rather than a term in the penitentiary. The issue thus became the motive for Griffin's testifying against the defendant. Griffin's assertion that the defendant had contracted to have him physically assaulted strongly implied that this was the reason for his willingness to give testimony. To this extent, the answer was responsive to counsel's general line of questioning though it was, clearly, not responsive to the specific question.

We have no doubt that the witness' assertion was prejudicial. Yet, our inquiry does not terminate the moment we find that a portion of a witness' testimony prejudiced the defendant.

When Griffin made his assertion, defense counsel did not move to strike the answer nor to have the jury instructed to disregard the answer. It may be that this would not have been sufficient to cure any unfair prejudice to the defendant. If counsel so thought, then he should have promptly moved the Court to declare a mistrial. Counsel failed to do so, stating at oral argument that he was sure his motion would not have been granted. That may or may not have been an accurate prediction. One thing that is sure, however, is that any error in refusing to declare a mistrial would have been preserved on appeal.

Rather than pursuing the above remedies, counsel expressly disclaimed any intention to do so, stating: "It is unresponsive, Your Honor, *but I am going to proceed into this.*" (emphasis supplied) Thereafter, defense counsel pursued the subject at length. On surrebuttal, the defendant resumed the witness stand and denied ever having put out a "contract" on Griffin.

Defense counsel's statement and actions lead to only one conclusion. As a matter of trial tactics, defense counsel deliberately waived any objection to the answer and pursued the matter, hoping to gain an advantage by showing the assertion to be false and thereby convincing the jury that Griffin was totally untrustworthy. Only through eyes of hindsight, and only after the selected strategy had failed, does counsel view the answer as reversible error. We hold that no reversible error occurred. *See Estelle v. Williams,* 425 U.S. 501, 98 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *St. John v. Estelle,* 544

F.2d 894 (5th Cir.), *aff'd, on rehearing en banc,* 563 F.2d 168 (1977); *United States v. King,* 505 F.2d 602 (5th Cir. 1974).

■ We now address defendant's final enumeration of error. When defense counsel was seeking to discredit Griffin's "contract" assertion, Griffin testified that he had previously told a state grand jury about the incident. He further testified that the two persons who had allegedly "executed the contract," but not the defendant, had been indicted. Counsel requested a continuance in order that a colleague of his could seek to obtain the grand jury transcript for possible use to impeach Griffin's testimony. The trial judge refused to grant the continuance. Defendant asserts that the refusal was an abuse of discretion. We disagree.

At the outset, it must be remembered that defense counsel, by freely pursuing the matter, created his perceived need for the grand jury transcript at virtually the conclusion of the trial. Furthermore, the defendant resumed the stand and denied the whole alleged incident. Thus, if Griffin had indeed made a prior inconsistent statement to the grand jury, it would have been of a cumulative nature in impeaching the witness. Furthermore, continuance was sought to gather impeachment evidence pertaining to a matter collateral to the issue of defendant's predisposition. *See United States v. Dinitz,* 538 F.2d 1214 (5th Cir.), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1976). Finally, it does not at this date appear that counsel has yet ascertained whether or not Griffin actually did testify to the grand jury as to a "contract." Nowhere in the record does it appear that a continuance would have aided the defense in any way. No motion for new trial has ever been filed in the District Court and at oral argument, counsel could not inform this Court of any "substantial favorable evidence" which he had discovered. We hold the trial judge did not abuse his discretion in denying the requested continuance. *United States v. Brannon,* 546 F.2d 1242 (5th Cir. 1977).

The judgment of the District Court is AFFIRMED.