**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William Robert COOK,**
**Defendant-Appellant.**

**No. 78–5311.**

United States Court of Appeals,
Fifth Circuit.

April 6, 1979.

Lucien B. Campbell, Federal Public Defender, P. Joseph Brake, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, W. Ray Jahn, Ronald P. Guyer, James E. Bock, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before JONES, CLARK and GEE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

This is William Robert Cook's second appeal to this court from charges stemming from his connection with Arcola Petroleum Corporation. We reversed his first conviction for procedural reasons, while affirming that of his original codefendant, Charles Stafford Jackson. *United States v. Cook*, 557 F.2d 1149 (5th Cir. 1977). A jury on retrial again found Cook guilty of fourteen counts of mail fraud. This appeal asserts procedural errors in pursuit of a second reversal. We affirm.

Cook was owner and active president of Olympic Petroleum Company, a Texas corporation which sold fractional interests in oil wells by mailing offerings to potential out-of-state investors. In January 1974 a corporation with similar business purposes, Arcola Petroleum Corporation, was organized. Olympic's attorney handled the formalities and filings, and an Olympic salesman, Daniel Horrell, became Arcola's president. Jackson, Cook's original codefendant and Olympic's former sales manager, set up and managed Arcola's two offices in Midland, Texas and Scottsdale, Arizona. Arcola adopted Olympic's offering forms as well as its sales force and customer list. It is not disputed that several of Arcola's offerings, inducing $251,449.16 in investments, were fraudulent. Among many misrepresentations regarding ownership and status

of wells, it was shown that some of the mineral leases Arcola purported to own were actually held by Olympic. Through Olympic, Cook received over $50,000.00 of Arcola's receipts.

The government used Jackson, who was then in prison as a result of his conviction in the original proceeding, as its main witness against Cook. He testified that Cook masterminded the formation of Arcola as a refuge from the Securities and Exchange Commission's watchful eye over Olympic. Jackson ran the Arcola operations according to the directions he received from Cook, who remained in Olympic's Dallas office.

Part of Cook's defense strategy was to discredit Jackson's story with evidence which sought to demonstrate that it was fabricated because of inducements Jackson received from the government. Several of Jackson's fellow inmates testified that he had said he would lie for the government in order to get out of prison. While denying this accusation on cross examination, Jackson blurted out:

. . . For that matter every one of these guys have threatened to me since last November with death. And I can bring you a jillion different people down here that have come to me and told me that if I testified that they would see that a contract went out on me and I was killed. In fact, this guy Hancock who you haven't even brought up, who you will in a minute, Hancock offered a friend of mine, Lindsey Mason, $5,000 to keep me from coming down here. Now, where in the hell he would get five grand, I don't know.

Cook's attorney objected and moved for a mistrial. The court sustained the objection, denied a mistrial, and instructed the jury to disregard the statement.

Defendant now urges that this testimony was so prejudicial that a mistrial should be granted. He relies on United States v. Poteet, 573 F.2d 351 (5th Cir. 1978), in which Poteet also asserted prejudicial error from an unresponsive outburst during cross examination of a government witness. In that case the witness directly accused Po-

teet of having him and his wife captured, taken for a ride, and beaten. We affirmed the district court's determination that any possible prejudice to Poteet was waived by his tactical choice to pursue the subject in an effort to discredit the remarks. The testimony in Poteet was more prejudicial to that defendant than Jackson's statement which did not attempt to implicate Cook. Moreover, Jackson's relatively innocuous remark was, upon objection, immediately followed by an instruction to the jury to disregard the statement. If any juror might have discerned any improper suggestion that Cook was directly or indirectly having Jackson threatened to prevent his testifying (rather than that convicts don't like persons who "squeal"), such an impression was erased by the court's prophylactic instruction.

Cook's next assertion of error attacks the prosecutor's statement made during closing argument that if Cook was acquitted, "maybe you will be fortunate enough to have your name on his next list for mailings." It was error for the prosecutor thus to attempt to intimidate the jurors. Yet, since there was no contemporaneous objection, reversal must be predicated on "plain error." United States v. Juarez, 566 F.2d 511 (5th Cir. 1978). In order for an error to be within the classification of "plain" it must be not only obvious and substantial but also so basic and so prejudicial that the resulting trial lacks the fundamental elements of justice. The "plain error" concept confers upon a reviewing court "a residuum of power which, withheld from the trial participants' usual control over preservation of error, protects not only their immediate interests but also the criminal justice process itself." United States v. Johnson, 585 F.2d 119, 127 (5th Cir. 1978). Although the prosecutor's argument injected an improper consideration into the juror's deliberations, a timely objection would have afforded the court an opportunity to correct any apprehension created by the comment. In view of the court's careful instructions limiting the force of argument of counsel and the considerable evidence of

guilt before them, we cannot say that any misapprehension planted in the jurors' minds substantially affected the verdict.

■■■ Defendant further objects to the admission over objection of testimony by a secretary who served both Olympic and Arcola. The statements complained of relate to Cook's falsification of Olympic drilling reports used to influence potential Olympic investors prior to the formation of Arcola. Cook argues that this information is irrelevant to his Arcola activities. We agree that it would be inadmissible if its sole purpose were to implicate Cook in the Arcola scheme merely by establishing his bad character. Fed.R.Evid. 404(b). However, the trial court may properly permit the introduction of evidence as to other activities by the defendant which are relevant to motive or course of conduct. *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978); Fed.R.Evid. 404(b). Previous evidence had clearly identified Arcola's scheme as one patterned after Olympic's, and the secretary's testimony tended to show Cook's knowing misrepresentations while conducting Olympic. We cannot say that the district court abused its discretion in receiving the evidence for the limited purpose to which it was relevant and in determining that its probity outweighed any prejudices against defendant.

Cook contends that his time of retrial rights under the Speedy Trial Act, 18 U.S.C.A. § 3161 et seq., have been violated and that prosecution was therefore barred. Section 3161 of the Act establishes time limits for initiating the various stages of prosecution. The relevant portion of that section requires a retrial to

> commence within sixty days from the date of the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within sixty days impractical.

18 U.S.C.A. § 3161(e). Sanctions for failure to adhere to these time limits are set forth in section 3162. Although failure to timely prosecute may in some circumstances result in dismissal, section 3162 does not expressly authorize dismissal for noncompliance with the retrial deadlines in section 3161(e). Furthermore, Congress determined that a "phase-in-period" was necessary during which the operative sections of the Act are in effect as guidelines unsupported by sanctions. Thus section 3162 does not mandate substantive relief to defendants until July 1, 1979. 18 U.S.C.A. § 3163.

We need not determine the appropriate relief in this case, however, since it is clear that the handling of Cook's retrial did not violate the interests preserved in the Act. This court's decision that Cook's first conviction should be vacated was dated August 19, 1977; our mandate issued to the district court on October 5, 1977. Retrial was then scheduled for November 9, 1977, but on Cook's motion retrial was continued to February 1, 1978. The case was reassigned on Cook's later motion and eventually went to trial on March 13, 1978.

■■■ Cook argues only that the district court's original setting of retrial for November 9 was beyond the sixty-day limitation of section 3161(e). However, he begins computation of the sixty-day period on the date our decision was released. This is incorrect. This court retains jurisdiction over an appeal until it has issued a mandate to implement its disposition. *See Meredith v. Fair,* 306 F.2d 374 (5th Cir. 1962). Rule 41 of the Federal Rules of Appellate Procedure directs the time for issuance of a mandate and provides that its issuance shall be withheld pending disposition of petitions for rehearing or for Supreme Court review. The district court did not reacquire jurisdiction over Cook's case until the mandate of this court was issued. The district court originally scheduled Cook's retrial to commence within thirty-five days of the receipt of our mandate, well within the sixty-day limitation.

■■■ Cook maintains that his motion for change of venue from the Western District

of Texas to the Northern District of Texas should have been granted for the convenience of his witnesses. Such a ruling is within the discretion of the trial court. Fed.R.Crim.P. 21. He has not alleged that failure of the court to grant his motion in any way burdened his defense. In the absence of any showing of prejudice the ruling will not be disturbed on appeal. *United States v. Thaggard,* 477 F.2d 626 (5th Cir.) *cert. denied,* 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973).

Finally, Cook challenges the sufficiency of the evidence to support his conviction. This contention is refuted by the record, viewing the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Cook admits to having helped in the formation of Arcola by advancing money, leases, leads to potential investors, and office furniture, in return for which Olympic received $50,000. Jackson's testimony is damning. Although Cook attacks Jackson's credibility, that issue was for the jury to evaluate. *United States v. Grimm,* 568 F.2d 1136 (5th Cir. 1978). Cook's conviction is

AFFIRMED.